UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KAYTLIN B.,[1] | Case No. 6:19-cv-00727-MK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, Social Security Administration, | |
| Defendant. | |

**Kasubhai,** United States Magistrate Judge:

Plaintiff Kaytlin B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 6. For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, the Court uses only the first name and the surname initial of non-government parties whose identification could affect Plaintiff's privacy.

Page 1 — OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI in August 2015 and February 2016 respectively, alleging a disability onset date of June 5, 2015. Tr. 189–95, 196–200. Her claims were denied initially and upon reconsideration. Tr. 90–94, 100–02. Thereafter, Plaintiff requested a hearing before an ALJ, and a hearing was held in April 2018 in which Plaintiff, her attorney, and a vocational expert ("VE"), appeared. Tr. 42–69. On May 10, 2018, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 18–34. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–3. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 23 years old on her alleged onset date. Tr. 71. She has a GED and no past relevant work. Tr. 33, 57, 216. Plaintiff alleges disability based on fibromyalgia, chronic pain syndrome, dysthymic disorder, chronic back pain, muscle spasm, paresthesia, fatigue, neck pain, palpitations, and periodic limb movement disorder. Tr. 71.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

Page 3 — OPINION AND ORDER

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: major depression; neurocognitive disorder; and chronic pain syndrome. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 21. Before proceeding to step four, the ALJ assessed Plaintiff's RFC. The ALJ found that Plaintiff had the RFC to perform light work, with the following limitations:

> [S]he pushes and pulls as much as she lifts and carries; [she] can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; never work at unprotected heights or near moving machinery, or operate a motor

> vehicle; [she] is limited to performing simple routine tasks, and make simple work related decisions; [she] can occasionally respond appropriately to supervisors, co-workers and the public; she can occasionally deal with changes in a work setting; [her] Time Off Task includes time off task that can be accommodated by normal breaks.

Tr. 22.

At step four, the ALJ found that Plaintiff did not have any past relevant work. Tr. 33. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite her impairments. *Id.* The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 34.

## DISCUSSION

Plaintiff assigns four errors to the ALJ's decision. First, she argues that the ALJ erred at step two by finding her fibromyalgia was not a severe impairment. Pl.'s Opening Br. 15–19, ECF No. 21 ("Pl.'s Br."). Second, she contends that the ALJ improperly rejected her subjective symptom testimony. *Id*. at 19–24. Third, she asserts the ALJ failed to provide legally sufficient reasons to reject the medical opinion of a consultative psychologist. *Id.* at 5–14. Finally, she argues the ALJ erroneously rejected lay witness testimony. *Id.* at 24–26. The Commissioner disagrees, asserting the ALJ's relevant conclusions do not constitute reversible error. *See* Defendant's Brief, ECF No. 22 ("Def.'s Br."). Because the Court finds that the ALJ failed to properly evaluate fibromyalgia at step two, the decision is based on legal error and must therefore be reversed and remanded for additional proceedings.

I.      **Fibromyalgia Evaluation at Step Two**

Plaintiff argues the ALJ committed reversible legal error by failing to find fibromyalgia was a medically determinable impairment ("MDI") at step two of the sequential evaluation process. At step two, an ALJ must evaluate the entire medical record and determine whether a claimant has any MDIs, and whether such MDIs are "severe," as defined by the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921. An ALJ is required to evaluate whether a claimant's MDIs include fibromyalgia based on the provisions of Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012).[2] Evaluation of fibromyalgia under its own SSR is required because of the unique nature of the impairment. *See Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). The disease is diagnosed *entirely* on the basis of a patient's reports of pain and other symptoms . . . there are no laboratory tests to confirm the diagnosis." *Id.* at 590 (emphasis added). "FM [fibromyalgia] is a common syndrome . . . . [and] can be the basis for a finding of disability." SSR 12-2p, at *2. Nevertheless, although fibromyalgia may be established as an MDI by evidence from an acceptable medical source, a diagnosis alone is insufficient. *Id.* Rather, "[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* Once diagnosed by an acceptable medical source, fibromyalgia can be established under either of two separate sets of criteria. *Rounds v.*

---

[2] Although SSRs do not carry the full force of statutes or regulations, they are nevertheless binding on ALJs. 20 C.F.R. § 402.35(b)(1).

Page 6 — OPINION AND ORDER

*Commissioner Social Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015) (citing SSR 12-2p, at *2–3).

Under the first set of criteria—based on the 1990 American College of Rheumatology ("ACR") criteria—fibromyalgia may be established with evidence of: (1) history of widespread pain; (2) at least 11 tender points; and (3) "other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, at *2–3. Under the second set—based on the 2010 ACR criteria—it may be established by evidence of: (1) history of widespread pain; (2) "[r]epeated manifestations" of six or more fibromyalgia symptoms, signs, or co-occuring conditions, "especially . . . fatigue, cognitive of memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) evidence that other disorders that could cause such repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *Id.* An ALJ's failure to evaluate evidence of fibromyalgia under the 2010 ACR constitutes legal error. *See Rounds*, 807 F.3d at 1005.

Plaintiff asserts the ALJ erred by evaluating fibromyalgia under the 1990 ACR, rendering the RFC unsupported by substantial evidence. Pl.'s Br. 18. At step two, the ALJ reached the following conclusions:

> Although the claimant testified that she was told that she has fibromyalgia, no "acceptable medical source" had made such a diagnosis in compliance with the criteria of [SSR] 12-2p. Tender points are only referred to in non-specific terms, such as "multiple paraspinal trigger points, or in areas insufficient to amount to 11 positive points, such as in the right trapezius and right paraspinal areas, or, six areas in the T2-S1 joints and left SI joints. The claimant moreover has been diagnosed with chronic pain syndrome, neurocognitive disorder, and depression, none of which have been excluded as possible sources for related symptoms.

Tr. 21. The criteria summarized by the ALJ directly parallel the 1990 ACR criteria requiring history of pain, 11 tender points, and excluded MDIs. The Commissioner does not contest Plaintiff's assertion that the ALJ considered only the first set of criteria.

Page 7 — OPINION AND ORDER

However, the Commissioner argues that "Plaintiff points to no diagnosis on either set of fibromyalgia criteria to support her contention that the ALJ erred." Def.'s Br. 3. The Commissioner similarly contends Plaintiff "points to no evidence that her alleged fibromyalgia was ever diagnosed using this [2010 ACR] set of criteria." *Id.* But Plaintiff points to several instances where her fibromyalgia diagnosis was discussed. Pl.'s Br. 18. Of primary importance, Plaintiff demonstrates that fibromyalgia was diagnosed in August 2015 by acceptable medical source Polly Sepulvado, MD, following a physical exam. *See* Tr. 1369, 1371, 1373. Dr. Sepulvado additionally summarized Plaintiff's medical history, including a history of widespread pain and depression; treatment including trigger point injections and gabapentin; sleep disturbance; limitations in daily activities; and lab results. *See* Tr. 1370–74.

Plaintiff further demonstrates that another treating provider, Molly Filosi, FNP, indicated in July 2015 that she strongly suspected Plaintiff's symptoms of "widespread chronic pain, paresthesia in arms and legs, sleep issues, [and] depression" were caused by fibromyalgia. *See* Tr. 1384. Additionally, Plaintiff points to an October 2015 exam by neurologist Jerry Boggs, MD, who indicated her neurologic exam did not suggest peripheral neuropathy, but her symptoms "would be most common" in something such as "hyperventilation or perhaps even fibromyalgia." Tr. 1183.

The Commissioner contends Plaintiff's argument does no more than "cobble together various pieces of evidence and find support for a diagnosis that the record otherwise lacked." Def.'s Br. 3. That is plainly not the case. Consistent with the requirements of SSR 12-2p, Dr. Sepulvado demonstrably reviewed Plaintiff's medical history and conducted a physical exam. Tr. 1369, 1371, 1374. Although the doctor did not state explicitly whether she applied the 1990 or 2010 ACR criteria, her chart notes, in conjunction with the record as a whole, document six or

more manifestations of repeated manifestations of fibromyalgia symptoms, signs, or co-occurring conditions which are identified in SSR 12-2p, "especially manifestations of fatigue, cognitive memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome. SSR 12-2p, at *3.[3]

For example, Dr. Sepulvado noted complaints of a long history of diffuse pain, and such complaints are repeatedly mentioned throughout the medical record. Tr. 1370. The doctor diagnosed "unspecified sleep disturbance" as a "related problem" under the heading of "fibromyalgia," consistent with Plaintiff's repeated complaints of fatigue throughout the medical record, and likely consistent with insomnia and "waking unrefreshed." Tr. 1369. Depression was also diagnosed as a problem related to fibromyalgia, which is listed as both a symptom of, and co-occurring condition with, fibromyalgia in SSR 12-2p (moreover, the ALJ found "major depression" a severe impairment at step two).[4] Tr. 1369. The doctor noted Plaintiff had presented at urgent care with abdominal pain and given Prilosec for heartburn; both are symptoms listed in 12-2p. Tr. 1369, 1371. A history of hives with "unknown etiology" was documented by Dr. Sepulvado. Tr. 1371. Plaintiff reported headaches. Tr. 1370. Plaintiff was prescribed an inhaler for "asthma symptoms," likely consistent with wheezing or shortness of breath. Tr. 1369, 1371.

---

[3] The Social Security Administration identifies the following as somatic symptoms or signs of fibromyalgia, including: "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, seizures, dry eyes, shortness of breath, loss of appetite, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms." SSR-12p, at *3 n.9.

[4] The Administration identifies the following as co-occurring conditions: "irritable bowel syndrome or depression, anxiety disorder, chronic fatigue syndrome, interstitial cystitis, temporomandibular joint disorder ("TMJ"), gastroesophageal reflux disorder ("GERD"), migraine, or restless leg syndrome." SSR 12-2p, at *3 n.10.

The doctor further noted "intermittent tingling in her face or hands"; in other words, paresthesia. Tr. 1371. This evidence, all documented by Dr. Sepulvado and expressly codified in SSR 12-2p, easily meets the "six or more repeated manifestations" prong of the 2010 ACR, and therefore strongly supports the doctor's fibromyalgia diagnosis.

The final prong of the 2010 ACR criteria is "evidence that other disorders that could cause these repeated manifestations were excluded." SSR 12-2p, at *3. Because the third prong is the same in both sets of criteria, and despite evaluating only the first set of criteria, the ALJ determined that Plaintiff "has been diagnosed with chronic pain syndrome, neurocognitive disorder, and depression, none of which have been excluded as possible sources for related symptoms." Tr. 21. Plaintiff asserts the ALJ's conclusion is problematic for a number of reasons. Pl.'s Br. 17–18. For instance, Plaintiff contends depression is a co-occurring condition with fibromyalgia and does not account for her other fibromyalgia symptoms. She contends her neurocognitive disorder diagnosis was of unclear etiology, and regardless would not produce the pain component of fibromyalgia. Finally, Plaintiff contends that she experienced many symptoms not explained by her diagnoses.

The Commissioner does not address Plaintiff's argument regarding the third prong, and Plaintiff's explanations are compelling. Clearly, a depression diagnosis would not be eliminated as a source of symptoms because not only are the conditions often co-occurring, but depression is also itself a symptom of fibromyalgia. SSR 12-p, at *3.[5] The ALJ's finding is nonsensical.

Regarding neurocognitive disorder, the ALJ determined it was a severe impairment based on Dr. Warner's diagnosis of "neurocognitive disorder –unclear etiology R41.9." Tr. 30, 1501. Again, the ALJ's reasoning is difficult to discern. The diagnosis was based on deficits in delayed

---

[5] Depression is noticeably absent from the listed examples of "other disorders that may have symptoms or signs that are the same of similar to those resulting from [fibromyalgia][.]" SSR 12-2p, at *3 n.7.

Page 10 — OPINION AND ORDER

and immediate memory. Tr. 31, 1501. Such symptoms are consistent with some of those of fibromyalgia, specifically, "cognitive or memory problems." SSR 12-2p, at *3. What is not apparent is how a combination of memory symptoms of unclear origin would exclude the same memory symptoms of fibromyalgia, where symptoms are categorically of unclear origin. *See Benecke*, 379 F.3d at 590 (fibromyalgia diagnosed "entirely on the basis of patients' reports of pain and other symptoms"). Regardless, even if Plaintiff's memory symptoms were attributed to a condition other than fibromyalgia, she would still meet the requirements of SSR-12p based on the remaining fibromyalgia symptoms listed above. As such, the ALJ's reasoning was dubious at best, but in any event not explained with sufficient clarity to allow this court to provide meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

Finally, it is unclear why the ALJ determined the record evidence of plaintiff's chronic pain syndrome potentially excluded fibromyalgia. The ALJ repeatedly cited a list of Plaintiff's diagnoses in support of the chronic pain diagnosis, but that list also includes a separate diagnosis of fibromyalgia, and both are labeled "active problems." Tr. 21, 27, 1610. Similarly, Dr. Sepulvado indicated chronic pain syndrome was a "related problem" under the heading of her fibromyalgia diagnosis. Tr. 1369. At an appointment immediately prior to Dr. Sepulvado's, FNP Filosi identified "chronic pain syndrome" as Plaintiff's primary problem and explained her "widespread chronic pain . . . strongly suggested" fibromyalgia. Tr. 1384. The FNP also noted that she would order labs to rule out other etiologies, and indeed the record is replete with subsequent lab results. *Id.*, *see, e.g.*, Tr. 1619–22. Even the ALJ recognized chronic pain syndrome did not account for Plaintiff's other symptoms such as losing sight, blacking out, becoming shaky, and paresthesia of the arms, legs, or face; rather, the ALJ indicated those

symptoms "remain wholly unexplained." Tr. 26. It seems fibromyalgia might be a prime candidate to explain at least some, if SSR 12-2p is any guide. *See* SSR 12-2p, at *3 n.9.

Moreover, independent review of the medical record reflects that although the ALJ cited Tr. 1610 as the basis for the chronic pain diagnosis, the citation indicates the condition was diagnosed by FNP Filosi, who is not an acceptable medical source and therefore cannot establish the existence of an MDI. *See* SSR 06-03p, at *2, 2006 WL 2329939 (Aug. 9, 2006); *see also* Tr. 522, 1610. This constellation of law and fact calls into question whether the ALJ's conclusion is based on substantial evidence. At the very least, the ALJ's reasoning does not allow for meaningful review. *Brown-Hunter*, 806 F.3d at 492.

For these reasons, it is clear—not to mention uncontested—the ALJ considered only the 1990 ACR criteria to determine whether fibromyalgia was medically determinable. Such error requires remand. *See Weiskopf v. Berryhill*, 693 Fed. App'x 539, 542 (9th Cir. 2017). Further, the ALJ's decision not to find fibromyalgia an MDI at step two cast a shadow over the decision's other findings. The ALJ explained, for example,

> Much of the claimant's symptomatology is the result of impairments that do not lend themselves to objective measures, such as depression, or chronic pain syndrome, and she alleges symptoms such as pain and fatigue that are not quantifiable . . . . In addition to pain, fatigue, or depression, the claimant additionally refers throughout the record to entirely separate symptoms such as numbness, tingling, or black-outs, and other neurological abnormalities. Despite the emphasis the claimant places on these symptoms, no medical basis has been found for them, and clinical examinations fail to support her claims.

Tr. 25. Virtually every symptom the ALJ found unsupported by objective medical evidence is explicitly identified by SSR 12-2p.

On this shaky foundation, the ALJ linked the absence of objective medical evidence to the conclusion her self-reports were unreliable. *Id.* The ALJ assigned diminished weight to the

medical opinion of FNP Filosi because, as he put it, she attributed Plaintiff's limitations to fibromyalgia, "a disorder that is not established as a medically determinable impairment." Tr. 28 (internal quotation marks omitted). The ALJ discounted the testimony of Plaintiff's mother, because "[t]o the extent that pain, fatigue, or lack of concentration are indicated to be debilitating, they must be discounted as reflecting the behavior of an individual whose presentations have not been consistent." Tr. 32. These conclusions determined in part how the RFC was formulated and, consequently, the outcome of this case. However, the ALJ's conclusions were based on only one set of criteria for diagnosing fibromyalgia, despite the evidence described above suggesting she may satisfy the second set of criteria, if the evidence is properly evaluated. *See* SSR 12-2p, at *6 (effects of all MDIs must be considered in formulating the RFC); *see also Revels*, 874 F.3d at 662 (erroneous findings arising from a fundamental misunderstanding of fibromyalgia are a recurrent problem) (citing *Weiskopf*, 693 Fed. App'x at 541–42). Accordingly, the Court cannot conclude the ALJ's decision was free of legal error or based on substantial evidence.

## II.     Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). Where "an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler*, 775 F.3d at 1105.

The discussion above explains that the ALJ erred by failing to consider whether plaintiff's many symptoms met the 2010 ACR criteria, which has been recognized as grounds for remand in this circuit. *Weiskopf*, 693 Fed. App'x at 542. However, it is beyond the purview of this Court to establish an MDI and then determine how the MDI effects the RFC. *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015) (citing 20 C.F.R. § 416.927(d)(2)). Accordingly, an ALJ on remand must consider both criteria under SSR 12-2p, determine whether fibromyalgia is an MDI based on the record evidence, and proceed from there. For the reasons described below, the Court does not reach Plaintiff's additional assignments of error.

In addition to the step two error, Plaintiff separately assigns ALJ error in evaluating her subjective symptom testimony and the lay testimony of her mother. But because Plaintiff's arguments on those issues are premised in part on the establishment of fibromyalgia as an MDI (Pl.'s Br. 22–23, 26), the issues are best resolved on remand because absent fibromyalgia, material conflicts between the relevant testimony and the medical evidence remain. *Treichler*, 775 F.3d at 1105.

Plaintiff additionally argues the ALJ's errors in evaluating the medical opinion of Dr. Warner regarding Plaintiff's neurocognitive disorder constitute independent grounds for an immediate award of benefits. Specifically, Plaintiff contends that if Dr. Warner's opinion was credited as true, she would be entitled to benefits based on the VE's testimony that, *inter alia*, missing four workdays per month directs a finding of disability. Pl.'s Br. 5–14; *see* Tr. 30–31, 65, 1495–1508, 1757–58. However, Plaintiff's request puts the horse before the cart. Before the Court may remand for benefits, it must determine (1) the ALJ failed to provide legally sufficient reasons to reject evidence, (2) whether the record is fully developed and there are no outstanding conflicts or ambiguities in the testimonial or medical evidence that must be resolved, and (3) if

the erroneously discredited testimony were credited as true, "not the slightest uncertainty as to the outcome of the proceeding" remains. *Treichler*, 775 F.3d at 1100–01. Only when all three prongs are met may the court choose to exercise its discretion to award benefits. *Id.* at 1101–02.

As noted earlier, Dr. Warner diagnosed neurocognitive disorder of unclear etiology and major depression following a single psychological exam and opined on concomitant functional limitations. Tr. 1501, 1505–08. Two years later, Dr. Warner provided the opinion that Plaintiff would have employment-precluding limitations in supervisory needs, attention, concentration, and attendance. Tr. 61, 64–65, 1757–58. The ALJ accorded little weight to the opinion, reasoning the limitations were based on overreliance on unreliable symptom reports, absence of and inconsistency with medical evidence, inconsistency with Plaintiff's ADLs, and lack of familiarity with Plaintiff's treatment history. Tr. 29–31. Plaintiff asserts that none of the ALJ's rationales for rejecting Dr. Warner's opinion are valid.

However, even assuming without finding the ALJ's rejection of Dr. Warner's opinion was based on legal error, this case does not present the "rare circumstances" where remand for an immediate award of benefits is appropriate. *See Treichler*, 775 F.3d at 1105–07. Here, the extensive record of plaintiff's mental and physical symptoms, conditions, and impairments demonstrates material conflicts and ambiguities which give the Court pause. For example, despite Dr. Warner's extreme limitations, the state agency medical source consultants opined that Plaintiff had *no* severe mental impairments or combination thereof; therefore, no mental functional limitations were assessed. Tr. 28, 30, 75–77, 86–88.[6] Additionally, as the ALJ noted,

---

[6] Plaintiff argues that because the psychological consultants did not identify Plaintiff's mental RFC, Dr. Warner's opinion must be accorded controlling weight because their assessments do not constitute medical opinions. Pl.'s Br. 6 n.4. The argument lacks merit. The regulations provide: "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis,

Page 15 — OPINION AND ORDER

mental health providers reported no deficits or concerns regarding Plaintiff's memory at a several visits. Tr. 29–30, 1592 (normal recent and remote memory). One of Plaintiff's providers even declined to write a note excusing her from work for mental health reasons. Tr. 30, 1463–64. Also, the ALJ identified examples of how Plaintiff's subjective reports to Dr. Warner were inconsistent with Plaintiff's ADLs, including her ability to maintain her household and care for her child despite her report to Dr. Warner that she could not multitask, which the doctor identified as a limitation. Tr. 30–31, 1497–98, 1501. These inconsistencies and ambiguities are cause for further proceedings to determine the limiting effects of Plaintiff's impairments, particularly considering the ALJ failed to properly determine whether fibromyalgia is an MDI on this record. *See Brown-Hunter*, 806 F.3d at 495.

Accordingly, the Court does not reach the issue of whether to credit any testimony or medical opinion as true. *Id.* On remand, the ALJ must: (1) properly evaluate the record as a whole to determine whether fibromyalgia is an MDI under the 1990 or 2010 ACR criteria, including procuring the testimony of a medical expert, if necessary; (2) if applicable, determine

---

what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Plaintiff concedes that the consultants did not include a mental RFC determination because they found no severe mental impairments. There is no ambiguity that the consultants opined Plaintiff is no more than minimally affected by mental limitations by virtue of adjudging them non-severe, as the record reflects the consultants completed the psychiatric review technique and found no more than minimal limitations in the four relevant domains. Tr. 75–76, 86–87. An RFC "considers only functional limitations and restrictions that result from an individual's medically determinable impairment[.]" SSR 96-8p, at, *1, 1996 WL 374184 (July 2, 1996). Thus, because the consultants did not find any severe mental MDIs, any RFC assessment was categorically precluded. *Id.* (when there is no information of record that there is any functional limitation or restriction, "the adjudicator must consider the individual to have no limitation or restriction"); *see* 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3) (only if MDI is severe will RFC be assessed). Here, the consultants determined Plaintiff had mental MDIs, the MDIs did not satisfy any diagnostic criteria, and they did not require any mental restrictions in basic work activities. Tr. 75–76, 86–87. For these reasons, Dr. Warner's contrary opinion stands contradicted on this record. Moreover, Plaintiff provides no contrary authority to support her position.

whether fibromyalgia is a severe MDI; (3) if applicable, determine whether Plaintiff's fibromyalgia alone or in combination with other MDIs meets or equals a listing at step three; (4) if applicable, consider the MDI of fibromyalgia, whether severe or non-severe, in formulating an RFC pursuant to SSR 12-2p; and (5) if applicable, proceed through the remainder of the sequential evaluation process. With these instructions, the Court remands this case on an open record. *See id.*

## CONCLUSION

For the reasons above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED on an open record pursuant to sentence four of 42 U.S.C. § 405(g) for additional proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 29th day of September 2020.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI<br>
United States Magistrate Judge